## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Western Robidoux, Inc., | ) | Case No. 19-50505 |
| | ) | |
| Debtor. | ) | Chapter 7 |
| | ) | |
| | ) | |
| Western Robidoux, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. No. 21-4009 |
| | ) | |
| Boehringer Ingelheim Animal Health | ) | |
| USA, Inc., | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER DENYING BOEHRINGER INGELHEIM
## ANIMAL HEALTH USA, INC.'S MOTION TO DISMISS

Defendant Boehringer Ingelheim Animal Health USA, Inc. ("BIAH") asks the court to dismiss chapter 7 trustee Jill Olsen's five-count amended adversary complaint. BIAH argues the amended complaint does not state a claim under any count because the allegations in the complaint do not enable the court to draw the reasonable inference that BIAH is liable for the misconduct alleged. Specifically, BIAH argues counts I, II, and III do not state facially plausible claims for avoidance and recovery of fraudulent transfers because the trustee does not sufficiently allege that Western Robidoux Inc. ("WRI") received less than reasonably equivalent value for transfers it made to BIAH or was insolvent during the relevant periods. BIAH argues count IV does not state a facially plausible claim for contractual

indemnification because the trustee does not allege WRI incurred any liability, and the applicable statute of limitations bars the claim. Finally, BIAH argues count V does not state a facially plausible claim for money had and received because the trustee does not allege facts sufficiently establishing that BIAH received a benefit unjustly.

Because the court determines the trustee sufficiently alleges lack of reasonably equivalent value and insolvency under counts I, II, and III, and further determines the trustee states facially plausible claims for contractual indemnification and money had and received under counts IV and V, the court DENIES BIAH's motion to dismiss.

## JURISDICTION

The court has jurisdiction over BIAH's motion to dismiss under 28 U.S.C. §§ 1334 and 157(a). This matter is statutorily core under 28 U.S.C. § 157(b)(2)(A), (H), and (O) and is constitutionally core. No party has contested the court's jurisdiction or authority to adjudicate BIAH's motion to dismiss.

## BURDEN OF PROOF

As movant, BIAH bears the burden to establish that each of the challenged counts of the trustee's amended adversary complaint is legally insufficient. *See Gill Constr., Inc. v. 18th & Vine Auth.*, No. 05-0608, 2006 WL 8438149, at *1 (W.D. Mo. July 11, 2006) (assigning burden of proof to party requesting dismissal under Rule 12(b)(6)).

## BACKGROUND

The court derives the following background information from the amended complaint and attached exhibits, statements counsel for each party made at oral argument, and the record in this adversary proceeding.

This dispute arises in part from WRI's former business relationship with BIAH.  The trustee describes WRI as "a commercial printing and fulfillment company," and describes BIAH as "part of an international group that is the world's largest private pharmaceutical company."  Am. Compl. ¶¶ 8, 10, ECF No. 33.  In 2008, "[WRI] and BIAH entered into a Services and Goods Supply Agreement" under which "BIAH would purchase from [WRI], and [WRI] would provide to BIAH, marketing and distribution materials necessary for BIAH's business."  *Id.* ¶¶ 11, 14, Ex. 1.  The parties' supply agreement included provisions requiring each party to "indemnify, defend, and hold [the other party] harmless against any and all losses, costs, damages, liabilities, claims, expenses (including reasonable attorneys' fees) . . . arising from [the indemnifying party's] performance under the [supply agreement]."  *Id.* ¶¶ 37, 78, Ex. 1.

The trustee alleges that, after 2008, "a dispute arose" between WRI, BIAH, and a third party.  *Id.* ¶ 15.  The dispute "involv[ed] the website used by [WRI] and BIAH to transact business."  *Id.* ¶¶ 16, 20.  In 2014, the third party allegedly served cease-and-desist letters on WRI and BIAH.  *Id.* ¶¶ 17–18.  BIAH subsequently "began demanding that [WRI] indemnify it for legal fees related to the [dispute]."  *Id.* ¶ 36.  From early 2014 to late 2019, WRI paid BIAH $531,722.49 in indemnity

payments. *Id.* ¶ 57.

In 2015, the third party sued WRI, BIAH, and others in federal district court. *Id.* ¶ 22. Less than one year later, the district court dismissed three counts of the federal litigation for lack of jurisdiction. *Id.* ¶ 24.

The trustee describes the federal litigation as "vigorously contested" and "culminating in a jury trial in 2020 pitting [the third party] against BIAH, [WRI,] and two other defendants." *Id.* ¶ 27. The jury in the federal litigation ultimately entered verdicts in favor of WRI and BIAH and against the third party. *Id.* ¶ 28.

While the federal litigation was pending, the third party sued WRI in state court. *Id.* ¶ 30. Like the federal litigation, the state litigation was allegedly "vigorously contested." *Id.* ¶ 35. But unlike the federal litigation, the state litigation "culminated in a jury trial in April 2018 with a judgment against [WRI]." *Id.*

The trustee appears to attribute WRI's financial decline at least partially to the indemnity payments WRI made to BIAH, which the trustee alleges WRI "was not obligated to pay" under the terms of parties' supply agreement. *Id.* ¶¶ 44, 53, 61, 70. The trustee alleges that "[s]ubsequent to BIAH's demand for indemnity, [WRI] paid BIAH more than $500,000 for BIAH's legal fees related to the [f]ederal [c]ourt [l]itigation." *Id.* ¶ 38. The trustee further states, "[t]he cashflow constraints on [WRI] due to the payments made to BIAH were simply too much; on October 19, 2019, [WRI] filed its [chapter 11] voluntary petition." *Id.* ¶ 39.

WRI filed the original version of the present complaint against BIAH in

February 2021, asserting five counts: (I) avoidance of fraudulent transfers under 11 U.S.C. § 548; (II) avoidance of fraudulent transfers under 11 U.S.C. § 544 and the Missouri Uniform Fraudulent Transfer Act (MUFTA); (III) recovery of property fraudulently transferred; (IV) breach of contract; and (V) unjust enrichment. Compl., ECF No. 1. BIAH filed a motion to dismiss the complaint under 12(b)(6) of the Federal Rules of Civil Procedure, arguing the complaint did not state a claim under any count. BIAH Mot. to Dismiss, ECF No. 11.

The court entered an order granting BIAH's motion to dismiss and granted plaintiff leave to amend the complaint. Order Granting BIAH's Mot. To Dismiss, ECF No. 32. The court determined WRI did not make sufficient allegations in counts I, II, and III. *Id.* The court further determined the allegations in the complaint did not give BIAH fair notice of the nature of each claim WRI brought in counts IV and V. *Id.* Subsequently, the trustee filed her first amended complaint against BIAH in which she seeks to remedy the deficiencies from WRI's original complaint. Am. Compl., ECF No. 33. The amended complaint retains counts I, II, and III from the original complaint but incorporates additional factual allegations. Count IV now asserts a claim for contractual indemnity, and count V now asserts a claim for money had and received. *Id.*

Having outlined the relevant background information, the court next analyzes whether the trustee's amended complaint states a claim upon which relief can be granted.

## ANALYSIS

Rules 8(a)(2) and 12(b)(6) of the Federal Rules of Civil Procedure, which apply to this adversary proceeding under Rules 7008 and 7012 of the Federal Rules of Bankruptcy Procedure, govern the present dispute. Rule 8(a)(2) provides, "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Bankr. P. 8(a)(2). Rule 12(b)(6) empowers parties to file motions to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

To avoid dismissal under 12(b)(6), a complaint must include sufficient factual content to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint states a facially plausible claim if the facts alleged provide the defendant with "'fair notice' of the nature of the claim, [and the] 'grounds' on which the claim rests." *See id.* at 555 n.3 (construing Fed. R. Civ. P. 8(a)(2)). Under this standard, the court should not dismiss a complaint under 12(b)(6) if the facts pleaded enable the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The court takes a multi-step approach to determining whether the complaint states a facially plausible claim. *See, e.g.*, *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (setting forth three-step test). First, the court must determine the elements of each cause of action in the complaint. *Id.* Next, the court must consider all allegations together, accept them as true, and construe them in

6

favor of the nonmoving party. *See Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (construing *Iqbal*, 556 U.S. at 678–79); *Kulkay v. Roy*, 847 F.3d 637, 641 (8th Cir. 2017) (requiring court to construe allegations in favor of plaintiff). But the court may disregard "formulaic recitation[s] of the elements of a cause of action" and any allegations that amount to mere labels and conclusions. *Braden*, 588 F.3d at 594 (quoting *Iqbal*, 556 U.S. at 678). Finally, the court must analyze each count independently to determine whether the complaint sufficiently alleges each element of each cause of action. *See, e.g.*, *Santiago*, 629 F.3d at 130 (setting forth three-part test).

Applying this test, the court will analyze all counts of the amended complaint below.

## A. Counts I, II, and III: Avoidance and Recovery of Fraudulent Transfers

In the first three counts of the amended complaint, the trustee seeks (I) avoidance of fraudulent transfers under 11 U.S.C. § 548, (II) avoidance of fraudulent transfers under 11 U.S.C. § 544 and Mo. Rev. Stat. §§ 428.024.1(2) and 428.029.1, and (III) recovery of any avoidable transfers under 11 U.S.C. § 550.

BIAH asks the court to dismiss counts I, II, and III under Rule 12(b)(6). BIAH first argues counts I and II do not satisfy Rule 8 because the trustee does not sufficiently allege that WRI received less than reasonably equivalent value for the transfers. BIAH also argues the trustee does not sufficiently allege circumstances that establish constructive fraud. Specifically, BIAH challenges the sufficiency of the trustee's allegations that WRI was insolvent during the relevant periods,

arguing that to sufficiently allege insolvency one must discount WRI's contingent liabilities by the likelihood the contingency will occur to reduce the contingent liabilities to their present value.  BIAH Mot. to Dismiss 18–19, ECF. No. 40. BIAH further argues the trustee does not sufficiently allege WRI had unreasonably small capital during the relevant periods.  Finally, BIAH argues count III does not state a claim for recovery of fraudulent transfers under § 550 because the court must dismiss counts I and II for avoidance of the relevant transfers.

### 1. Counts I, II, and III State Facially Plausible Claims for Avoidance and Recovery of Constructively Fraudulent Transfers

Many of the elements a plaintiff must allege to state a claim for avoidance of constructively fraudulent transfers under federal bankruptcy law and the MUFTA are the same.  Specifically, to succeed under § 548 of the Bankruptcy Code and §§ 428.024.1(2) and 428.029.1 of the MUFTA, a plaintiff must prove the following common elements: (1) the debtor had a property interest; (2) the debtor voluntarily or involuntarily transferred that interest; (3) the transfer occurred within a specified limitations period—two years under § 548 of the Bankruptcy Code, and four years under §§ 428.024.1(2) and 428.029.1 of the MUFTA; (4) the debtor received less than reasonably equivalent value for the transfer; and (5) at least one additional indicium of constructive fraud is present.  11 U.S.C. § 548(a)(1); Mo. Rev. Stat. §§ 428.024.1(2), 428.029.1[1], 428.049.

---

[1] Though not presently at issue, Mo. Rev. Stat. § 428.029.1 requires plaintiffs to prove one additional element.  Because § 428.029.1 governs transfers "fraudulent as to [] creditor[s] whose claim[s] arose before the transfer," to succeed under § 428.029.1, a plaintiff must prove the "creditors' claims arose before [the debtor made] the transfer."  *Reed v. Juergens (In re Juergens)*, Bankr. No. 12-21841, Adv. No. 13-02028, 2014 WL 978156, at *2 (Bankr. W.D. Mo. Mar. 11, 2014).

The additional indicium of constructive fraud that a plaintiff must prove under the fifth element above, however, differs under each fraudulent transfer statute.

Section 548 lists four alternative indicia of constructive fraud the plaintiff may prove to satisfy its burden: that the debtor (a) was insolvent at the time of the transfer or became insolvent as a result of the transfer, (b) had or was about to have unreasonably small capital, (c) intended to incur or believed it would incur debts beyond its ability to pay, or (d) made the transfer to or for the benefit of an insider under an employment contract and not in the ordinary course of business.   11 U.S.C. § 548(a)(1)(B)(ii).

In contrast, § 428.024.1(2) of the MUFTA provides only two available indicia the plaintiff may prove to satisfy the fifth fraudulent transfer element: that the debtor (a) had or was about to have unreasonably small capital, or (b) intended to incur or "believed or reasonably should have believed" it would incur debts beyond its ability to pay.  Mo. Rev. Stat. § 428.024.1(2).

Finally, § 428.029.1 lists only one indicium of constructive fraud a plaintiff may prove to satisfy the fifth fraudulent transfer element: that the debtor was insolvent at the time of the transfer or became insolvent as a result of the transfer.

For purposes of both § 548 and the MUFTA, a debtor is insolvent if the sum of the debtor's debts exceeds the fair value of its assets.  *See* Mo. Rev. Stat. § 428.014 (defining insolvency under Missouri law); 11 U.S.C. § 101(32) (defining insolvency under bankruptcy law).  In addition, courts presume a debtor is insolvent

9

under Missouri law if the debtor is not paying its debts as they become due.  Mo. Rev. Stat. § 428.014.

BIAH argues the trustee did not state a plausible claim under counts I and II because the allegations in the complaint, if true, would not sufficiently establish that WRI (1) did not receive reasonably equivalent value for the transfers, or (2) was insolvent at the time of the transfers or became insolvent as a result of the transfers.  For the following reasons, the court determines the trustee sufficiently alleges lack of reasonably equivalent value and insolvency.

### 1. The Court Can Infer from the Allegations in the Amended Complaint that WRI did not Receive Reasonably Equivalent Value for the Transfers

The amended complaint, like WRI's original complaint, includes allegations that sufficiently support the inference that WRI did not receive reasonably equivalent value for its indemnification payments.  To sufficiently allege lack of reasonably equivalent value, the trustee must plead: "(1) value was given; (2) it was given in exchange for the transfers; and (3) what was transferred was [not] reasonably equivalent to what was received."  *Meeks v. Don Howard Charitable Remainder Tr. (In re S. Health Care of Ark., Inc.)*, 309 B.R. 314, 319 (B.A.P. 8th Cir. 2004).

BIAH does not dispute the first two elements.  But BIAH does challenge the sufficiency of the trustee's allegations concerning the third element—that what WRI transferred was not reasonably equivalent to what it received.

The court determines the trustee sufficiently pleads that WRI did not receive reasonably equivalent value for its transfers to BIAH.  The trustee alleges that WRI

10

was not contractually obligated to make the transfers and that the transfers resulted in a windfall to BIAH. Am. Compl. ¶¶ 42, 59. The trustee premises these allegations on her interpretation of section 12.1 of the supply agreement. *Id.* ¶¶ 51–54, 68–71. She argues that WRI's obligation to pay BIAH's legal expenses is limited to expenses arising from WRI's performance under the agreement. *Id.* She alleges that BIAH incurred its expenses from its own alleged performance, not that of WRI. *Id.* ¶¶ 54, 71. Accepting these allegations as true and construing them in favor of the trustee, the court infers that WRI did not receive reasonably equivalent value for the transfers.

BIAH argues the trustee's assertion that WRI made the transfers without a contractual obligation does not satisfy her burden to sufficiently allege lack of reasonably equivalent value. BIAH cites *Kaler v. Able Debt Settlement, Inc. (In re Kendall)*, for the proposition that a transferee can receive reasonably equivalent value for a transfer even if the transferee was not contractually obligated to make the transfer. *Kaler v. Able Debt Settlement, Inc. (In re Kendall)*, 440 B.R. 526, 532 (B.A.P. 8th Cir. 2010). But *Kendall* merely illustrates the court's discretion to discern lack of reasonably equivalent value from the unique circumstances of each case. *See id.* at 532–33 (analyzing reasonably equivalent value). The court's discretion to infer that a debtor received reasonably equivalent value for a transfer the debtor was not contractually obligated to make does not prevent the court from inferring that the debtor did not receive reasonably equivalent value when other allegations in the complaint support that inference. *C.f. id.* at 532–33 (discussing

11

"common sense" inquiry into reasonably equivalent vale).  Construing the amended complaint in favor of the trustee, the court exercises its discretion in this case to determine the trustee sufficiently alleges lack of reasonably equivalent value.

Moreover, the extent of WRI's contractual obligation to make the payments is unclear at this stage of the litigation.  BIAH argues, and the court agrees, that a "contract's alleged illegality does not preclude a finding of reasonably equivalent value." *Id.* at 532.  The contract's alleged illegality, however, is a factual issue the court cannot yet decide because it has not yet heard evidence of what each side gave and received in the exchange.  At the pleading stage, the court merely accepts as true the facts pleaded and makes reasonable inferences from those facts.  *Kendall* does not prevent this court from reasonably inferring from the trustee's allegations that WRI received less than reasonably equivalent value for the indemnification payments.

The court, therefore, determines the trustee sufficiently alleged WRI did not receive reasonably equivalent value for its transfers.

## 2. The Trustee Sufficiently Alleges the Additional Indicia of Constructive Fraud

The court also determines the trustee sufficiently alleges more than one additional indicium of constructive fraud under the fifth fraudulent transfer element.  The trustee's allegations implicate two indicia of constructive fraud: insolvency and unreasonably small capital.   The court will discuss each in turn.

To bolster her allegations of WRI's insolvency, the trustee includes for the first time in the amended complaint several graphs that purport to illustrate WRI's

financial condition during the relevant periods. Some of those graphs purportedly show that WRI's contingent and noncontingent debts have exceeded its assets since February 2016, thus rendering WRI insolvent. Other graphs exclude WRI's contingent liabilities but still purportedly show significant degradation of WRI's assets and equity since February 2016. These graphs help the court determine that the trustee sufficiently alleges WRI's insolvency since February 2016.

The trustee sufficiently alleges that for all relevant periods WRI's debts exceeded its assets. For example, the amended complaint contains a graph that tracks WRI's alleged debt-to-asset ratio from February 2016 to August 2019. The graph shows that on February 1, 2016, WRI had approximately $3 million in contingent and non-contingent debts and assets valued at approximately $2.5 million. And on August 1, 2019, WRI had approximately $2.5 million in contingent and non-contingent debts and assets valued under $1 million. These allegations satisfy the trustee's burden under Rule 8.

BIAH argues the trustee has not sufficiently alleged WRI's insolvency because the trustee uses the full value of WRI's contingent liabilities in her insolvency calculation. The trustee calculates insolvency by subtracting the full value WRI's contingent and non-contingent liabilities from the value of WRI's assets. BIAH argues the allegations concerning the alleged value of WRI's liabilities do not sufficiently establish WRI's insolvency because the court cannot accurately determine from the complaint the present value of WRI's contingent liabilities. BIAH asserts that to correctly calculate WRI's insolvency, the trustee

13

must allege the present value of WRI's contingent liabilities, calculated by discounting the amount of each contingent liability by the likelihood the contingency will occur. The court, however, will not require the trustee to allege the discounted value of WRI's contingent debts at this stage of the litigation. During discovery BIAH will have the opportunity to suss out facts necessary to accurately value WRI's contingent liabilities. The trustee's allegations of insolvency satisfy her burden under Rule 8.

BIAH further argues that the court should dismiss counts I, II, and III because the trustee fails to provide any "supporting documentation," i.e., evidence, that demonstrates how she derived the data on which she bases her allegations. Thus, "there is no plausible way to determine from what has been alleged whether WRI was actually or potentially insolvent at times relevant to the First Amended Complaint." BIAH Mot. to Dismiss 19, ECF No. 40. Rule 8 does not require the trustee to provide evidence in its complaint, which makes BIAH's evidentiary argument premature at this time. As a result, the trustee sufficiently alleges insolvency.

The trustee also sufficiently alleges an additional indicium of constructive fraud: that WRI had or was about to have unreasonably small capital at the time of the transfers. The graphs the trustee includes in counts I and II of the amended complaint purport to show that WRI's financial condition had been deteriorating since February 2016. Further, the trustee sufficiently alleges WRI had unreasonably small capital at the time of the transfers "as evidenced by its

declining debt-to-asset ratio and negative profitability noted above and inability to pay its debts as they became due." Am. Compl. ¶ 48, ECF. No. 33. The trustee, therefore, sufficiently states a claim for relief under counts I and II.

Because the amended complaint states a plausible claim for avoidance of constructively fraudulent transfers, it necessarily states a claim for recovery of avoidable transfers under 11 U.S.C. § 550. *See* 11 U.S.C. § 550 (permitting recovery of property transferred "to the extent that a transfer is avoided under section 544 . . . [and] 548."). The court, therefore, denies BIAH's motion to dismiss counts I, II, and III for failure to state a claim under Rule 12(b)(6).

### B. Count IV: Contractual Indemnification (In the Alternative)

In Missouri, courts construe indemnification agreements under the principles of contract law. *Burns & McDonnell Eng'g. Co. Inc., v. Torson Const. Co., Inc.*, 834 S.W.2d 755, 757–58 (Mo. Ct. App. 1992) (citing *Teter v. Morris*, 650 S.W.2d 277, 282 (Mo. Ct. App. 1982)). Indemnity agreements can require an indemnitor to indemnify an indemnitee against liability, loss, or both. *Id.* at 758 (citing *Superintendent of Ins. v. Livestock Mkt. Ins. Agency, Inc.*, 709 S.W.2d 897, 903 (Mo. Ct. App. 1986)). Parties who assert an action for indemnity against loss may state a plausible claim for relief without alleging the indemnitee incurred liability. *Id.* at 757. And a plaintiff who only seeks indemnification for attorneys' fees need not tender a defense as a prerequisite to a contractual indemnification action if the contract expressly provides for reimbursement of attorneys' fees and expenses. *Id.* at 757 n.2 (citing *Missouri Pacific Ry. Co. v. Rental Storage & Transit Co.*, 524

S.W.2d 898, 912 (Mo. Ct. App. 1975)).

Actions for contractual indemnification are subject to a five-year statute of limitations. Mo. Rev. Stat. § 516.120; *see Burns & McDonnell*, 834 S.W.2d at 757 ("both parties concede the applicable limitations period is five years as prescribed by § 516.120"). The five-year period begins to accrue when "the damage resulting [from the indemnity agreement] is sustained and is capable of ascertainment, and, if more than one item of damage, then the last item, so that all resulting damage may be recovered, and full and complete relief obtained." Mo. Rev. Stat. § 516.100.

The trustee brings an action for contractual indemnification against loss, alleging, among other things, that "BIAH has failed to perform its obligation to indemnify [WRI] pursuant to the Agreement, despite the fact that [WRI] incurred damages that arose from BIAH's performance under the Agreement." Am. Compl. ¶ 85, ECF. No. 33. BIAH asks the court to dismiss this count because: (1) the trustee does not sufficiently plead that WRI's damages arise from BIAH's performance under the Supply Agreement; (2) the trustee can neither (a) assert a contractual indemnification action until WRI incurs liability nor (b) recover attorneys' fees in an indemnification action; and (3) even if the trustee could assert an indemnification action, the statute of limitations on such action has expired. For the reasons explained below, the court rejects each of BIAH's arguments.

## 1. The Trustee Sufficiently Pleads that WRI Suffered Losses in the Form of Litigation Costs that Arise from BIAH's Performance Under the Supply Agreement

The court can reasonably infer from the allegations in the amended

16

complaint that WRI's losses arise from BIAH's performance under the supply agreement. The trustee alleges that BIAH's conduct was a central theme in the federal litigation and caused WRI to incur millions of dollars in litigation costs "arising from" BIAH's performance under the contract. The trustee asserts multiple factual allegations that purport to tie BIAH's conduct to WRI's losses. These allegations include that: BIAH had a role in replicating the third party's software; the causes of action asserted by the third party were based on BIAH's conduct; and BIAH must indemnify WRI for the legal expenses it incurred in the federal litigation. Am. Compl. ¶¶ 20, 22, 25, 26, 53, 54, 70, 71, 82, 83. Accepting these allegations as true and construing them in favor of the trustee, the court can reasonably infer that WRI suffered losses in the form of litigation costs arising from BIAH's conduct and performance under the contract.

### 2. The Trustee States a Plausible Claim for Contractual Indemnification for WRI's Losses in its Defense in the Federal Litigation

Because the trustee asserts a claim for indemnity against loss, not liability, the trustee need not allege WRI incurred liability to state a viable claim. As the *Burns & McDonnell* court acknowledged, under Missouri law a plaintiff need not allege it incurred liability to state a plausible claim for contractual indemnification. *Burns & McDonnell*, 834 S.W.3d at 757. The relevant provision of the Supply Agreement, section 12.3, requires BIAH to indemnify WRI "from and against any and all losses, costs, damages, liabilities, claims, expenses (including reasonable attorneys' fees)" it incurs arising from BIAH's performance under or breach of the

contract. Am. Compl. ¶ 78, Ex. 1, ECF. No. 33. The contract, therefore, plainly provides for indemnification against both loss and liability. The trustee alleges WRI has incurred over $2.5 million in litigation costs—indemnifiable losses—so far in its defense in the federal litigation. The trustee, therefore, sufficiently pleads count IV as an action for contractual indemnification for the loss, not liability, WRI incurred in the federal litigation.

Moreover, because the trustee exclusively seeks attorneys' fees and costs, and the contract specifically provided for indemnification of attorneys' fees and costs, the trustee can also state a claim for indemnification against loss without alleging WRI tendered a defense to BIAH. Accordingly, the court determines the trustee states a plausible claim for relief under count IV.

### 3. The Statute of Limitations Has Not Yet Expired on the Trustee's Contractual Indemnification Claim

BIAH argues the statute of limitations expired on the contractual indemnification claim before WRI filed its bankruptcy petition. Though unclear, BIAH appears to argue that WRI's damages from the federal litigation became sustained and capable of ascertainment and the statute of limitations began to accrue when one of the following events occurred: (a) BIAH received the cease-and-desist letter from the third party in February 2014; (b) BIAH tendered its demand for indemnity and defense to WRI in June 2014; or (c) WRI's counsel responded to BIAH's demand in August 2014 and WRI incurred defense costs related to the third-party's claims. Applying the five-year statute of limitations to these proposed accrual dates, BIAH argues the limitations period ran no later than August 2019,

two months prior to WRI's petition for chapter 11 relief.  But BIAH's argument is inconsistent with Mo. Rev. Stat. § 516.100.

Under § 516.100, each attorneys' fee expense WRI incurred is an item of damage.  Because each of WRI's numerous attorneys' fees is an item of damage, the statute of limitations on count IV will begin to run when WRI sustains and can ascertain the last attorney's fee it will incur in the federal litigation.  Because the appeal is ongoing and WRI's estate continues to incur legal fees, the statute of limitations on the indemnification claim has not begun to accrue, much less expired. This conclusion is consistent with Missouri law and will allow WRI to receive full and complete relief for its alleged damages.

Because the trustee states a plausible claim for relief under count IV and the statute of limitations has not yet expired, the court denies BIAH's motion to dismiss count IV for failure to state a claim under Rule 12(b)(6).

### Count V: Money Had and Received (In the Alternative)

In Missouri, a claim for money had a received "lies where the defendant has received or obtained possession of the money of the plaintiff, which, in equity and good conscience, he ought to pay over to the plaintiff." *Invs. Title Co., Inc. v. Hammonds*, 217 S.W.3d 288, 293–94 (Mo. 2007) (quotation omitted).  This cause of action has three elements: (1) the defendant obtained money from the plaintiff; (2) the defendant appreciated a benefit from the plaintiff's money; and (3) the defendant's acceptance and retention of the plaintiff's money was unjust.  *Ward v. Luck*, 242 S.W.3d 473, 476 (Mo. Ct. App. 2008).

In the trustee's count against BIAH for money had and received, the trustee alleges, among other things, that "BIAH's acceptance and retention of Plaintiff's $531,722.49 was and is unjust and inequitable, in part because Plaintiff was not contractually obligated to pay such sums and BIAH should not have demanded such payments from Plaintiff."  BIAH asks the court to dismiss count V because "the Trustee has alleged no facts plausibly showing that an actual injustice would occur if BIAH retained the payments that it was contractually entitled to receive." Because the court can infer from the allegations in the amended complaint that BIAH's retention was unjust, the court denies BIAH's motion to dismiss count V.

### 1. The Trustee States a Plausible Claim for Money Had and Received for $531,722.49 WRI Paid to BIAH

BIAH argues (1) the court must dismiss the trustee's claim for money had and received because the trustee pleads no facts that show WRI mistakenly made payments to BIAH, and (2) the trustee's allegation that WRI was not contractually obligated to pay the attorneys' fees is a legal conclusion that does not satisfy the trustee's burden to plead that BIAH's acceptance and retention of the payment was unjust.  The court disagrees because (1) mistake is not an element of money had and received, and (2) the court infers from the allegations in the amended complaint that BIAH's retention was unjust.

It appears that BIAH confuses the elements of a money had a received claim with the usual circumstances in which plaintiffs bring these claims.  As both parties admitted at oral argument, claims for money had and received usually arise from a plaintiff's mistaken payments.  But a plaintiff may assert an action for money had

and received outside the context of mistaken payments, as evidenced by the action's elements. The court will not require the trustee to plead mistake as an additional element of money had and received.

The trustee alleges sufficient facts to state a plausible claim under the three elements of money had and received. The trustee sufficiently alleges the first element by asserting that BIAH obtained $531,722.49 from WRI. The trustee sufficiently alleges the second element by asserting that BIAH benefited from the money because BIAH used the money to pay its attorneys' fees and earn interest income. The trustee sufficiently alleges the third element by asserting that BIAH's acceptance and retention of the money was unjust because WRI had no contractual obligation to pay BIAH $531,722.49.

This third assertion, together with other allegations in the amended complaint, satisfies the unjust retention element. Some of the other relevant allegations include that WRI indemnified BIAH for legal expenses BIAH incurred defending against claims stemming from its own conduct and that "the indemnity provision in the Agreement relied upon by BIAH does not apply to situations where BIAH's own conduct was the basis for BIAH being named a party." Am. Compl. ¶ 54. Further, the trustee alleges that no court has determined WRI committed a negligent act or engaged in any willful misconduct requiring WRI to make the indemnification payments. Accepting these factual allegations as true and construing them in favor of the trustee, the court can infer that BIAH's rights to receive indemnification did not materialize and WRI had no contractual obligation

to pay BIAH's legal expenses.  Because the court can infer WRI had no obligation to pay BIAH's legal expenses, the court can further infer BIAH's retention was unjust. Thus, the complaint includes sufficient allegations to survive BIAH's motion to dismiss under all three elements.

## CONCLUSION

For the reasons explained above, the court DENIES BIAH's motion to dismiss the amended complaint.  BIAH has 30 days from the date of this order to answer the amended complaint.

It is so ordered.

Dated: 1/27/2022                           /s/ Brian T. Fenimore
                                           United States Bankruptcy Judge